CV 13 2991

SUMMONS ISSUED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
TERRI BRADSHAW and RICHARD RIOS,
                Plaintiffs,

      -against-

THE CITY OF NEW YORK, DETECTIVE
DAVID COWAN [SHIELD # 1558],
SERGEANT JAMES CAHILL [SHIELD #
0220], and JOHN DOE AND JANE DOE #1-7
(the names John and Jane Doe being fictitious,
as the true names are presently unknown),
                Defendants.
--------------------------------------------------------------X

Case No.

**COMPLAINT**

**JURY DEMAND**

COGAN, J.

Plaintiffs, TERRI BRADSHAW and RICHARD RIOS, by their attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, Detective David Cowan [Shield # 1558], Sergeant James Cahill [Shield # 0220], and John Doe and Jane Doe #1-7 (collectively, "defendants"), respectfully allege as follows:

## NATURE OF THE ACTION

1.     This is an action at law to redress the deprivation of rights secured to the plaintiffs under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiffs by the Fourth, Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

## JURISDICTION

2.     The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

3.     As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

## COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS

4. Plaintiffs timely made and served a notice of claim upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e.

5. At least thirty days have elapsed since the service of aforesaid notice of claim and adjustment or payment thereof has been neglected or refused.

6. This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) is based.

## THE PARTIES

7. Plaintiffs are and were at all times material herein residents of the United States and the State of New York.

8. At all relevant times, defendants Detective David Cowan [Shield # 1558], Sergeant James Cahill [Shield # 0220], and John Doe and Jane Doe #1-7 (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

9. At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

10. At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom, practice, usage, regulation and/or at the direction of the defendant City of New York.

11. Plaintiffs are suing the defendant officers in their individual and official capacities.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12. On or about March 6, 2012, at approximately 6:30 p.m., defendant officers, acting in concert, arrested plaintiffs without cause at or within the vicinity of

Ms. Bradshaw's home at the time which is located at 753 MacDonough Street, Apt. 3D, Brooklyn, New York, and charged Mr. Rios with PL 220.16 'Criminal possession of a controlled substance in the third degree', among other charges.

13. Plaintiffs, however, were not in possession of any controlled substance, and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

14. Prior to the arrest, Mr. Rios, who is Ms. Bradshaw's boyfriend, was babysitting their infant child, Z.R., at the aforementioned arrest location when Mr. Rios' friend, Donavan Zimmerman, visited him.

15. Ms. Bradshaw who is an employee of the City of New York Department of Correction had gone to work at the time.

16. At the time of Mr. Zimmerman's visit, Z.R. was asleep in one of the bedrooms.

17. As Mr. Rios and Mr. Zimmerman were engaged in a conversation in the living room, they heard banging on the doors of the approximately 25 apartment units at the complex -- 753 MacDonough Street, Brooklyn, New York.

18. After a few moments, Mr. Rios heard a loud noise and banging on the entrance or front door to Ms. Bradshaw's apartment -- Apt. 3D.

19. Because of the loud noise and banging, Z.R. was awaken from her sleep and started crying.

20. Mr. Rios then entered into the bedroom and carried Z.R. in his arms.

21. With Z.R. in his arms, Mr. Rios went to open the front door as the noise and banging persisted ceaselessly.

22. By the time Mr. Rios reached the front door, the door had already been broken and was about to fall.

23. That Mr. Rios managed to unlock and open the door.

24. As soon as Mr. Rios opened the door, defendant officers, with their weapons drawn, forcibly grabbed Z.R. from Mr. Rios' arms and pulled Mr. Rios out of the apartment.

25. As soon as Mr. Rios was pulled outside, he was slammed on the wall by defendant officers.

26. Mr. Rios who was only wearing his shorts and a T-shirt at the time was then tightly handcuffed by defendant officers with his hands placed behind his back.

27. After handcuffing Mr. Rios, defendant officers slammed him to the wall.

28. After a period of time, Mr. Rios was placed inside a police van with several prisoner/arrestees sitting inside the van at the time.

29. Throughout this time, Mr. Rios remained in his shorts and T-shirt only.

30. One of the prisoners inside the van at the time was Paul Lewis who resides at 765 MacDonough Street, Brooklyn, New York, and was merely standing in front of 753 MacDonough Street, Brooklyn, New York at the time of his arrest. Upon information and belief, defendant officers later falsely charged Mr. Lewis with criminal possession and sale of a controlled substance.

31. Eventually, after approximately 30 minutes from the time Mr. Rios was first grabbed and arrested by defendant officers, Mr. Rios was transported to NYPD-73rd Precinct wearing only his shorts and T-shirt.

32. While at the precinct, Mr. Rios was subjected to a strip/body cavity search in the presence and clear view of other individuals who were present at the time.

33. The aforesaid strip/body cavity search was illegal because defendant officers lacked reasonable suspicion to believe that Mr. Rios was in possession of contraband, weapons, and/or a means of escape.

34. Even though defendant officers did not find anything illegal, defendant officers nonetheless detained Mr. Rios at the precinct.

35. After arresting Mr. Rios, defendant officers contacted Ms. Bradshaw's superiors at her job and informed them that they were at Ms. Bradshaw's home and that Ms. Bradshaw must return home.

36. Ms. Bradshaw was then summoned by her superiors who connected her on the phone with defendant officers.

37. Once connected, defendant officers informed Ms. Bradshaw that they were in the process of arresting Mr. Rios and that she must return home.
38. Upon returning home at approximately 9:00 p.m., Ms. Bradshaw was informed by defendant officers that Mr. Rios had been arrested.
39. Because the defendant officers were all over Ms. Bradshaw's home searching and moving things around, Ms. Bradshaw informed defendant officers that she placed $1,000 cash in her drawer and that she would like to retrieve the money from her drawer.
40. The defendant officers however refused and did not allow Ms. Bradshaw to enter into her home.
41. That the defendant officers informed Ms. Bradshaw that they would retain custody of Z.R., and that they would detain and transport Ms. Bradshaw to the precinct for interrogation.
42. That Ms. Bradshaw was then arrested and transported to NYPD-73rd Precinct where she was detained and interrogated for several hours.
43. Throughout this time, defendant officers retained custody of Z.R. and refused to release Z.R. to her mother, Ms. Bradshaw.
44. On or about March 7, 2012, at approximately 1:30 a.m., defendant officers after interrogating Ms. Bradshaw for a lengthy period of time released Ms. Bradshaw from her unlawful detention.
45. Eventually, defendant officers released Z.R. to Ms. Bradshaw.
46. Upon her release, Ms. Bradshaw returned home.
47. Upon returning home, Ms. Bradshaw found her home to be completely thrashed with several of her properties including, but not limited to, her computer and sofa damaged and/or destroyed.
48. Additionally, Ms. Bradshaw was and has been unable to locate her $1,000.
49. After detaining Mr. Rios at the precinct for a lengthy period of time, Mr. Rios was transported to the Central Booking to await arraignment.
50. While Mr. Rios was awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

51. During this meeting, defendant officers falsely stated to the prosecutors, among other things, that Mr. Rios was in possession of a controlled substance.

52. Based on the false testimony of defendant officers, a prosecution was commenced against Mr. Rios.

53. On or about March 8, 2012, following his arraignment, Mr. Rios was released on his own recognizance but was required to return to the criminal court to defend the false charges levied against him.

54. On or about April 4, 2013, the false charges levied against Mr. Rios were summarily dismissed.

55. Mr. Rios who was unemployed and was seeking employment at the time of his arrest missed several opportunities to secure gainful employment because of the arrest and false charges levied against him by defendants.

56. That each and every officer who responded to and/or was present at the location of the arrest and/or at the precinct or facility knew and was fully aware that the plaintiffs did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

57. Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

58. As a result of the aforesaid actions by defendant officers, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, financial losses, and damage to reputation.

## FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

59. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 58 of this complaint as though fully set forth herein.

60. The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, malicious abuse of process, failure to intervene, subjection to a strip/body cavity search, illegal and unreasonable

stop, frisk, search and seizure, racial profiling, loss of rights to familial association, pattern of harassment, abuse of authority, unlawful entry, unlawful taking of private property, conspiracy, discrimination, fabrication of evidence, denial of equal protection of the laws, denial of right to a fair trial, denial of due process rights and malicious prosecution.

61. Such conduct violated plaintiffs' rights under 42 U.S.C. § 1983 and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution.

62. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

63. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 62 of this complaint as though fully set forth herein.

64. Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

65. Additionally, defendant City of New York, acting through Charles J. Hynes and the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses

and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

66. Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally strip searching, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiffs, who are blacks, on the pretext that they were involved in narcotics and/or drug transactions.

67. Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

68. For example, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

69. Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

70. In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics

and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

71. Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

72. Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

73. Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

74. That Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

75. That the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

76. Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

77. That Mr. Simms was falsely charged with PL 220.16 'Criminal possession of a controlled substance in the third degree', among other charges. As noted above, Mr. Rios was also falsely charged with PL 220.16 'Criminal possession of a controlled substance in the third degree', among other charges.

78. In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman, Sergeant Bobby Hadid and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

79. Upon information and belief, many of the named individual defendants, including but not limited to defendants David Cowan and James Cahill, have a lengthy substantiated history of police misconduct, fraud and dishonesty. Further, many of the named individual defendants, including but not limited to Cowan and Cahill, are named defendants in numerous lawsuits in this district and in the Southern District of New York alleging similar claims as

those alleged herein -- many of which lawsuits have been settled by defendant City of New York with said defendant making substantial monetary payments to the plaintiffs in the said lawsuits.

80. In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-73rd Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with possession of narcotics and/or illegal drugs.

81. That most of the arrests and charges for possession of narcotics and/or illegal drugs made by officers assigned to the NYPD-73rd Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

82. That defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-73rd Precinct in connection with the unlawful arrests and charges described herein. *See, e.g., Geneeza Walls v. City of New York* (10 CV 5769); *Jermaine Tolbert v. City of New York* (11 CV 4871); *Anthony Holley v. City of New York* (12 CV 259); *Paul Lewis v. City of New York* (12 CV 1323); *Ramel King v. City of New York* (12 CV 1824); *Tyquan Myrick v. City of New York* (12 CV 2411); *Ramel King v. City of New York* (12 CV 4322).

83. That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

84. The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in their person and property, to be free from abuse of process, racial profiling, the excessive use of force and the right to due process.

85. By these actions, defendants have deprived plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

### THIRD CAUSE OF ACTION: 42 U.S.C. § 1985

86. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 85 of this complaint as though fully set forth herein.

87. In an effort to find fault to use against the plaintiffs, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, Sixth and Fourteenth Amendments to United States Constitution, because of their race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

88. In light of the foregoing therefore, defendant officers engaged in a conspiracy designed to deprive the plaintiffs of their constitutional and federal rights in violation of 42 U.S.C. § 1985.

89. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore stated.

### FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

90. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 89 of this complaint as though fully set forth herein.

91. By reason of the foregoing, and by arresting, detaining and imprisoning plaintiffs without probable cause or reasonable suspicion, and harassing and assaulting them and depriving the plaintiffs of due process and equal protection of laws, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection

of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

92. In addition, defendant officers conspired among themselves and conspired with other individuals to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

93. Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

94. Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiffs' state constitutional rights.

FIFTH CAUSE OF ACTION: ASSAULT AND BATTERY

95. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 94 of this complaint as though fully set forth herein.

96. The conduct of defendant officers, as described herein, amounted to assault and battery.

97. By reason of and as a consequence of the assault, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to reputation.

98. Upon information and belief, defendant City of New York had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City of New York failed to take any

appropriate actions to assure plaintiffs' safety and security and failed to protect and/or safeguard plaintiffs' interests.

99. That defendant City of New York's failure to assure plaintiffs' safety and security was a proximate cause of plaintiffs' injuries.

## SIXTH CAUSE OF ACTION: OTHER NEW YORK TORTS

100. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 99 of this complaint as though fully set forth herein.

101. The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, illegal and unreasonable stop, frisk, search and seizure, negligence, conspiracy, special injury, loss of consortium, malicious abuse of process, harassment, tortuous interference, abuse of power, fraud, unjust enrichment, trespass and malicious prosecution.

102. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## SEVENTH CAUSE OF ACTION: NEGLIGENT & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

103. By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 102 of this complaint as though fully set forth herein.

104. The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to the plaintiffs.

105. Plaintiffs' emotional distress has damaged their personal and professional lives because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the assault, detention and imprisonment by defendants.

106. Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

Dated: Brooklyn, New York
     May 21, 2013

                    UGO UZOH, P.C.

By:    Ugochukwu Uzoh (UU-9076)
        Attorney for the Plaintiffs
        304 Livingston Street, Suite 2R
        Brooklyn, NY 11217
        (718) 874-6045